1

**FOLEY & LARDNER LLP**
402 W. BROADWAY, SUITE 2100
SAN DIEGO, CA 92101-3542

2
TELEPHONE:    619.234.6655
FACSIMILE:    619.234.3510

3
KENNETH S. KLEIN, CA BAR NO. 129172

4
**FOLEY & LARDNER LLP**
3000 K STREET, NW - SUITE 500
WASHINGTON, DC 20007-5101

5
TELEPHONE:    202.672-5300
FACSIMILE:    202.672-5399

6
ANAT HAKIM, (to be admitted *pro hac vice*)

7
Attorneys for Defendant The Rockefeller University, a New York not-for-profit

8
corporation,

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

12
Ligand Pharmaceuticals Incorporated, a
Delaware corporation,

13
            Plaintiff,

14
        vs.

15
The Rockefeller University, a New York
not-for-profit corporation,

16
            Defendant.

17

18

| | |
|---|---|
| Case No:  08-CV-401 BEN (WMc) | |

**MEMORANDUM IN SUPPORT OF THE ROCKEFELLER UNIVERSITY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY THIS ACTION**

| | |
|---|---|
| Judge: | Roger T. Benitez |
| Date: | April 14, 2008 |
| Time: | 10:30 a.m. |
| Courtroom: | 3 |

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
Page

3

BACKGROUND.................................................................................................... 1

4

ARGUMENT ........................................................................................................ 6

5

I.      PLAINTIFF'S DECLARATORY JUDGMENT ACTION SHOULD BE

6

        DISMISSED IN DEFERENCE TO THE UNIVERSITY'S PENDING NEW

7

        YORK STATE COURT ACTION. ........................................................... 6

8

        A.      It Is Well Established That This Court Has The Discretion And

9

                Authority To Decline To Hear This Declaratory Judgment Action. .. 6

10

        B.      Ligand's California Declaratory Judgment Action Should Be

11

                Dismissed In Deference To The University's Pending

12

                New York State Court Proceeding........................................................ 8

13

        C.      Dismissal Of A Federal Declaratory Judgment Action Is

14

                Particularly Appropriate Where The Other Pending

15

                Action Is A State Court Proceeding Involving Issues

16

                Predominantly Of State Law............................................................ 10

17

        D.      Any Jurisdiction And/Or Venue Arguments Ligand

18

                May Seek To Raise In Connection With The New York

19

                State Suit, Are Properly Considered By New York Courts

20

                Rather Than This Court...................................................................... 12

21

II.     IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED.................... 14

22

CONCLUSION ................................................................................................... 14

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Alltrade, Inc. v. Uniweld Products, Inc.,*
    946 F.2d 622 (9th Cir. 1991) .................................................................9

*Applera Corp. V. Illumina, Inc.,*
    282 F.Supp.2d 1120 (N.D. Cal. 2003) .................................................12

*Brillhart v. Excess Ins. Co. of America,*
    316 U.S. 491 (1942).................................................................*Passim*

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988).........................................................................11

*Exxon Shipping Co. v. Airport Depot Diner, Inc.,*
    120 F.3d 166 (9th Cir. 1997) .........................................................8, 13

*Golden Eagle Ins. Co. v. Travelers Cos.,*
    103 F.3d 750 (9th Cir. 1996) .............................................................8

*Gov't Employees Ins. Co. v. Dizol,*
    133 F. 3d 1220 (9th Cir. 1998) (en banc) .........................................6-8

*H.J. Heinz Co. v. Owens,*
    189 F.2d 505 (9th Cir. 1951) ...........................................................13

*Jim Arnold Corp. v. Hydrotech Sys., Inc.,*
    109 F.3d 1567 (Fed. Cir. 1997)........................................................11-12

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936)..........................................................................14

*Luckett v. Delpark,*
    270 U.S. 496 (1926) .........................................................................12

*MedImmune, Inc. v. Genentech, Inc.,*
    127 S. Ct. 764 (2007) ........................................................................6

*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) ..............................................................................9

*Phoenix Assurance PLC v. Marimed Foundation for Island Health Care Training,*
    125 F. Supp. 2d 1214 (D. Hawaii 2000) .........................................8, 11

ii

SDCA_1019324.1

# TABLE OF CONTENTS (CONT.)

**Page**

*Prize Frize, Inc. v. Matrix (U.S.) Inc.,*
  167 F.3d 1261 (9th Cir. 1999) ......................................................................11

*Shell Oil Co. v. Frusetta,*
  290 F.2d 689 (9th Cir. 1961) .......................................................................13

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,*
  819 F.2d 746 (7th Cir. 1987) .......................................................................13

*Trippe Mfg. Co. v. Am. Power Conversion Corp.,*
  46 F.3d 624 (7th Cir. 1995) .........................................................................13

*Wilton v. Seven Falls Co.,*
  515 U.S. 277 (1995).............................................................................*Passim*

*Xoxide, Inc. v. Ford Motor Co.,*
  448 F. Supp.2d 1188 (C.D. Cal. 2006) .......................................................8-9


**FEDERAL STATUTES**

28 U.S.C. §1332................................................................................................12

28 U.S.C. §1338................................................................................................12

28 U.S.C. §2201................................................................................................12

28 U.S.C. §1338...........................................................................................11-12

28 U.S.C. §.......................................................................................................13

28 U.S.C. § 1453(b) .........................................................................................13

28 U.S.C. § 2201................................................................................................6

28 U.S.C. §§ 2201, et seq.................................................................................4

28 U.S.C.A. § 400 .............................................................................................7

28 U.S.C. Section 2201-02 ...............................................................................7

1    The Rockefeller University (the "University") submits this memorandum in

2  support of its motion to dismiss, or, in the alternative, to stay Plaintiff Ligand

3  Pharmaceuticals, Inc.'s ("Ligand") declaratory action filed in this Court, in deference to a

4  pending New York state action.

5    In the New York state action, which was the earlier filed and served matter, the

6  University seeks damages and injunctive relief based on claims for breach of a September

7  30, 1992 License Agreement between the University and Ligand (the "1992

8  Agreement"), unjust enrichment/constructive trust, quantum meruit, specific performance

9  of the University's contractual right under the 1992 Agreement to perform an audit of

10  Ligand, and a declaration that certain products are subject to the terms and payment

11  provisions of the 1992 Agreement. The New York state action and this declaratory

12  action (which appears to have been filed by Ligand as a preemptive strike against the

13  University) involve the same state law issues of contract interpretation of the 1992

14  Agreement, which, by its terms, must be interpreted and governed according to New

15  York law. Furthermore, as discussed within, many key witnesses are located in New

16  York, and Ligand, having elected to have a presence in New York, cannot claim that New

17  York is an inconvenient forum. Finally, whereas this Court is being asked for a

18  discretionary declaration of rights, the New York state action will necessarily decide

19  those same issues in the context of a suit, alleging actual injury to the University. Under

20  circumstances such as this, the Ninth Circuit has affirmed the exercise of district court

21  discretion in dismissing a federal declaratory action in favor of a parallel state proceeding

22  that involves the same issues (especially, where as here, the New York state court

23  regularly interprets and enforces contracts under New York law) and parties. The

24  University respectfully submits that there are ample reasons for this Court to dismiss this

25  action.

26                            **BACKGROUND**

27    The Rockefeller University owns groundbreaking inventions that are powerful

28  tools to screen for therapeutic drugs which were discovered by Rockefeller University

Professor James E. Darnell Jr.  The University exclusively licensed this valuable

technology to Ligand under the 1992 Agreement.  Working under a 1994 agreement with

its exclusive sublicensee SmithKline Beecham ("SKB", now GlaxoSmithKline) ("1994

SKB/Ligand Agreement") and using the University's inventions, Ligand identified

several pharmaceutical molecules and received several milestone payments from SKB.

Ligand has failed to pay the University its contractual share of these milestone payments

according to the 1992 Agreement, despite the University's repeated payment requests.

Instead, in August 2007, shortly before SKB requested approval from the Food and Drug

Administration of Promacta®, one of the pharmaceutical molecules identified under the

1994 SKB/Ligand Agreement, and before royalties on Promacta® are anticipated to be

paid by SKB to Ligand, Ligand notified the University that Ligand was unilaterally

terminating the 1992 Agreement, although not permitted to do so by the license's terms.

The University, having fully performed its contractual obligation and faced with Ligand's

refusal to honor its payment obligations under the 1992 Agreement, had no recourse but

to file suit, and did so in the Supreme Court of the State of New York, County of New

York.  (*See* Complaint filed in *The Rockefeller University v. Ligand Pharmaceuticals,*

*Inc.,* Case No. 08/600638, filed at 9:02 a.m. EST on March 4, 2008, in the Supreme Court

of the State of New York in the County of New York (hereinafter, the "New York

Complaint"), attached as Exhibit 1 to the Declaration of Anat Hakim ("Hakim Decl."), at

pp. 1-2.)

Under Section 2.1 of the 1992 Agreement, the University granted Ligand a sole

exclusive world-wide license, under the University's broadly-defined Licensed Patent

Rights and Technical Information "to make, have made, use and sell Products or practice

Processes."  (*See* the 1992 License Agreement, attached as Exhibit 2 to the Hakim Decl.)

The license related to pioneering technology, which the New York Complaint describes

in detail and which is referred to as the STATs Pathway technology.  The STATs

Pathway technology was discovered by Professor Darnell.  Under Section 1.4 of the 1992

Agreement, the license grant to Ligand included an exclusive world-wide license to all

2

developments of Professor Darnell's laboratory relating to the STATs Pathway technology, existing as of the effective date of the 1992 Agreement and for five years thereafter. In connection with the 1992 Agreement, Professor Darnell and members of his laboratory did in fact collaborate with Ligand for years regarding the STATs Pathway technology. Over the course of several years, Dr. Darnell provided essential technical information, materials and insight to Ligand relating to the STATs Pathway technology. In addition, the University filed several patent applications and was issued several patents, describing aspects of its pioneering STATs Pathway technology. The technical information and expertise about STATs Pathway technology acquired by Ligand from the University pursuant to the 1992 Agreement was essential to the development of, among other things, a high throughput screen ("HTS") to identify cytokine agonists. The HTS was key to the identification and development of pharmaceutical drug candidates. *(See* Hakim Decl., Exhibit 1 at ¶¶12 and 13).

In return for the University's exclusive world-wide license to this pioneering STATs Pathway technology, Ligand obligated itself to:

      a.  "diligently seek to develop Products and/or Processes" using or based on the STATs Pathway technology provided to it under the 1992 Agreement (Section 2.7 of the 1992 Agreement);

      b.  make certain cash payment to the University during the first five years of the Agreement and to give the University an equity interest in Ligand (Sections 2.2 and 2.3 of the 1992 Agreement); and

      c.  pay the University a portion of any payments Ligand received from any third party "to secure the right to use Technical Information or to sell Products or Processes," (Section 2.5 of the 1992 Agreement*)* and a royalty on Ligand's own "Net Sales of Products and on its net revenues . . . received from performance of Processes for a third party." (Section 2.4 of the 1992 Agreement).

*(See* Hakim Decl., Exhibit. 1 at ¶14, Exhibit 2).

3

1    The parties' dispute centers on the language of Sections 2.4 and 2.5 of the 1992
2  Agreement, which address Ligand's payment obligations as to the University's share of
3  milestone and royalty payments from third parties (Section 2.5) and Ligand's royalty
4  payment obligations to the University based on Ligand's own sales of Products or
5  performance of Processes (Section 2.4). (*See* Hakim Decl., Exhibit 1). In addition, the
6  parties dispute whether Ligand effectively terminated the 1992 Agreement on August 9,
7  2007, which the University contends was not effective under the express termination
8  provisions of the 1992 Agreement. (*See Id.*). Any judicial determination of these
9  disputed contract terms will be made pursuant to New York law -- the 1992 Agreement
10  states that it "shall be interpreted and governed in accordance with the laws of the State
11  of New York." (*See* Hakim Decl., Exhibit 2, Section 13).

12    The parties have had ongoing negotiations in an attempt to resolve their dispute
13  without litigation for some time. On October 10, 2007, the parties entered into a Tolling
14  Agreement, which was effective through January 31, 2008. (*See* Hakim Decl., Exhibit 1
15  at ¶32). On January 17, 2008, the parties amended the Tolling Agreement, extending the
16  period through March 3, 2008. (*See Id.* at ¶34). During these discussions, the
17  University's counsel informed Ligand's counsel that the University would sue Ligand for
18  breach of the 1992 Agreement after expiration of the Tolling Agreement, in order to
19  preserve the University's claims.

20    Knowing that the University would file suit after the Tolling Agreement expired,
21  Ligand rushed to file a Complaint for Declaratory Judgment in this Court at 11:33 a.m.
22  EST (8:33 a.m. PST) on March 4 (hereinafter, the "California Declaratory Judgment
23  Complaint").[1]  Ligand's California Declaratory Judgment Complaint contains three
24  claims for relief, all under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.,
25  seeking a declaration of rights between the parties under the 1992 Agreement.
26  Specifically, Ligand seeks a declaration as to (1) the applicability and scope of two
27  
28  

---

[1] Solely for the purposes of this Motion to Dismiss or Stay, the University will treat the allegations
that Plaintiff made in its Complaint as if they were true.

4

1   defined terms in the 1992 Agreement ("Licensed Patent Rights" in Section 1.3 and

2   "Technical Information" in Section 1.4) as they apply to Ligand's payment obligations

3   under Sections 2.4 and 2.5; and (2) whether the 1992 Agreement has been terminated and

4   the nature of any rights terminated. (*See* California Declaratory Judgment Complaint

5   attached as Exhibit 3 to the Hakim Decl.). All of these are questions are governed by

6   New York state law.

7         A few hours before Ligand filed its California Declaratory Judgment Complaint,

8   the University had filed the New York Complaint. Both lawsuits are pending.

9         New York state court is the proper forum to determine the parties' contract

10  dispute. New York courts routinely apply and interpret New York law, as required here

11  under the 1992 Agreement. The University is a New York corporation, with its principal

12  place of business in New York City, New York. (*See* Hakim. Decl. Exhibit 1, ¶1).

13  Ligand has elected to register to do business in New York. (*See* (unofficial) New York

14  Department of State record, attached as Exhibit 4 to the Hakim Decl.). Professor Darnell,

15  who is 82 years old and a key witness for the University, resides and works in New York,

16  and several former members of Dr. Darnell's laboratory who worked on the pioneering

17  STATs technology with Dr. Darnell and have knowledge about meetings with and

18  information provided to Ligand by the University under the 1992 Agreement, continue to

19  work in New York. Another key third-party witness, SKB (now GlaxoSmithKline) –

20  Ligand's exclusive sublicensee under the 1992 Agreement, is located on the East Coast in

21  Philadelphia, not far from New York. For all of these third-party witnesses, New York is

22  a more convenient forum. Because the issues raised in Ligand's California Declaratory

23  Judgment Complaint are duplicative of those raised in the University's New York

24  Complaint, and because the contract issues to be determined under New York law would

25  be more properly addressed by the New York state action seeking actual damages or

26  coercive relief rather than in this California declaratory action, this Court should dismiss,

27  or in the alternative, stay the California action in deference to the pending New York

28  state suit.

1

**ARGUMENT**

2  I.    **PLAINTIFF'S DECLARATORY JUDGMENT ACTION SHOULD BE**

3        **DISMISSED IN DEFERENCE TO THE UNIVERSITY'S PENDING NEW**

4        **YORK STATE COURT ACTION.**

5              A.    It Is Well Established That This Court Has The Discretion And

6  Authority To Decline To Hear This Declaratory Judgment Action.

7              Ligand's lawsuit asks solely for declaratory relief, invoking this Court's authority

8  to decide matters pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[2] This

9  statute confers discretionary jurisdiction and provides that a district court "may declare

10 the rights and other legal relations of any interested party seeking such declaration." *Id.*

11 A lawsuit seeking federal declaratory relief must pass constitutional muster by presenting

12 an actual case or controversy and must also fulfill statutory jurisdictional prerequisites.

13 *See Gov't Employees Ins. Co. v. Dizol,* 133 F. 3d 1220, 1222-23 (9th Cir. 1998) (en

14 banc). Entertaining the declaratory judgment action must also be "appropriate." *See Id.*

15 at 1223.

16             The Ninth Circuit, the Federal Circuit, and the U.S. Supreme Court all have held

17 that federal district courts have discretion to decline to hear a declaratory judgment

18 action, even though it is within their jurisdiction. *Id.* (explaining that it is within the

19 district court's discretion to determine whether a declaratory action is appropriate);

20 *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 776 (2007) (reaffirming that trial

21 courts have "unique and substantial discretion" in determining whether to decide cases

22 over which they have declaratory judgment jurisdiction) (quoting *Wilton v. Seven Falls*

23 *Co.*, 515 U.S. 277, 286 (1995)); *see also Brillhart v. Excess Ins. Co. of America*, 316 U.S.

24

25 [2] The Declaratory Judgment Act, 28 U.S.C. Section 2201-02 states, in relevant part, that:

26        In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the
27        filing of an appropriate pleading, may declare the rights and other legal relations of any interested
          party seeking such declaration, whether or not further relief is or could be sought. Any such
28        declaration shall have the force and effect of a final judgment or decree and shall be reviewable
          as such.

6

1    491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the

2    Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, it was under no compulsion to

3    exercise that jurisdiction."); *Wilton*, 515 U.S. at 287 (describing "the unique breadth of [a

4    federal court's] discretion to decline to enter a declaratory judgment").  According to the

5    Ninth Circuit, factors articulated by the Supreme Court in *Brillhart* "remain the

6    philosophic touchstone for the district court" when it is deciding whether to hear a

7    declaratory judgment action:

8             The district court should avoid needless determination of state

9             law issues; it should discourage litigants from filing

10            declaratory actions as a means of forum shopping; and it

11            should avoid duplicative litigation. . . If there are parallel state

12            proceedings involving the same issues and parties pending at

13            the time the federal declaratory action is filed, there is a

14            presumption that the entire suit should be heard in state court.

15            . . federal courts should generally decline to entertain reactive

16            declaratory actions.

17

18   *Dizol*, 133 F.3d at 1225.  In addition to the *Brillhart* factors, the Ninth Circuit points to

19   other considerations, such as:

20            whether the declaratory action will settle all aspects of the

21            controversy; whether the declaratory action will serve a

22            useful purpose in clarifying the legal relations at issue;

23            whether the declaratory action is being sought merely for the

24            purposes of procedural fencing or to obtain a 'res judicata'

25            advantage; or whether the use of a declaratory action will

26            result in entanglement between the federal and state court

27            systems.  In addition, the district court might also consider the

28            convenience of the parties, and the availability and relative

7

1  convenience of other remedies.

2

3  *Id.* n. 5 (citation omitted).

4      It is thus well within this Court's discretion and authority to decline to exercise

5  jurisdiction over Ligand's California Declaratory Judgment action. Here, it is appropriate

6  for the Court to decline jurisdiction in the exercise of its discretion.

7      B.   Ligand's California Declaratory Judgment Action Should Be

8  Dismissed In Deference To The University's Pending New York State Court Proceeding.

9      Where, as here, there is a parallel state suit pending, the district court's discretion

10  to dismiss a suit for declaratory relief is broad. *See Wilton,* 515 U.S. at 282 (citing

11  *Brillhart,* 316 U.S. 491 (1942)). The Ninth Circuit and courts in this Circuit have held

12  that a plaintiff's declaratory judgment action would serve no useful purpose and is

13  properly denied where the action is merely a preemptive strike against another party who

14  sues the plaintiff for actual damages or coercive relief in another court. *Dizol,* 133 F.3d

15  at 1225; *Exxon Shipping Co. v. Airport Depot Diner, Inc.,* 120 F.3d 166, 168-70 (9th Cir.

16  1997);; *Phoenix Assurance PLC v. Marimed Foundation for Island Health Care*

17  *Training,* 125 F. Supp. 2d 1214, 1221 (D. Hawaii 2000); *Xoxide, Inc. v. Ford Motor Co.,*

18  448 F. Supp.2d 1188, 1192-94 (C.D. Cal. 2006).

19      In fact, it is Ninth Circuit law that "[i]f there are parallel state proceedings

20  involving the same issues and parties pending at the time the federal declaratory action is

21  filed, there is a *presumption* that the entire suit should be heard in state court." *Dizol,*

22  133 F.3d at 1225 (emphasis added) (citing *Chamberlain v. Allstate Ins. Co.,* 931 F.2d

23  1361, 1366-67 (9th Cir. 1991)).[3] The presumption is such that this rule applies even

24  where the state suit is filed *after* the declaratory action. The Ninth Circuit does not

25

26  [3] Even where the issues in the declaratory action and the pending state action are not the same, however, the Ninth Circuit has dismissed the declaratory action and held that "it is enough that the state proceedings arise from the same factual circumstances." *Golden Eagle Ins. Co. v. Travelers Cos.,* 103

27  F.3d 750, 754-55 (9th Cir. 1996) overruled on other grounds by Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998) (holding that question of whether declaratory judgment is appropriate need not

28  be raisesd *sua sponte* by the court).

8

1  adhere to a strict 'first to file' rule in situations where a declaratory judgment action

2  appears to have been filed to preempt litigation in another forum. *Alltrade, Inc. v.*

3  *Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir. 1991) ("The circumstances under

4  which an exception to the first-to-file rule typically will be made include bad faith,

5  anticipatory suit, and forum shopping ….") (citations omitted); *Xoxide,* 448 F. Supp. at

6  1192-93 (declaratory judgment plaintiff was first to file but because the record showed

7  that defendant had provided plaintiff with "specific concrete indications that a suit by

8  [defendant] was imminent," the declaratory suit is dismissed.). [4]

9       Here, the presumption for dismissal is even stronger in light of the fact that the

10  University's New York Complaint was filed first. The University also served its New

11  York Complaint first, having served it on Ligand on March 4; whereas Ligand did not

12  serve its California Declaratory Judgment Complaint on the University until March 6,

13  2008. Discovery in the University's New York action is underway, as the University

14  served Ligand with its First Set of Requests for Production on March 6, 2008, with a

15  response due from Ligand on March 26. In determining priority, courts must take into

16  consideration not only the filing date, but also the progress of the litigation, which in this

17  case has advanced further in the New York state action. *Moses H. Cone Memorial*

18  *Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 21 (1983) ("Priority should not be

19  measured exclusively by which complaint was filed first, but rather in terms of how much

20  progress has been made in the two actions.").

21       Ligand's California Declaratory Judgment action should be dismissed in deference

22  to the University's New York state court action. There can be no doubt that Ligand's

23  declaratory judgment lawsuit, filed after the University's warning of legal action against

24  it, was an attempted "preemptive strike." Moreover, the New York state action was filed

25  and served first, and discovery is underway. The New York forum is more convenient

26

27  [4] Although not discussed by the Supreme Court as a basis for its decision in either case, the
    plaintiffs in both *Brillhart* and *Wilton* filed their declaratory judgment actions in federal court
    before being sued in state court by the defendants. *See Brillhart,* 316 U.S. at 492-93; *Wilton,* 515
28  U.S. at 280.

9

1   for many key witnesses, including Dr. Darnell, who is 82 years old.  Finally, although not

2   explicitly required by the precedent set forth above, the issues that Ligand seeks to be

3   decided in this declaratory action—whether the products at issue are subject to the

4   payment provisions of the 1992 Agreement and whether the 1992 Agreement has been

5   terminated—undoubtedly will be decided in the University's New York state court action

6   against Ligand for damages, specific performance and declaratory relief in connection

7   with Ligand's breach of the 1992 Agreement (among other causes of action).

8          C.    Dismissal Of A Federal Declaratory Judgment Action Is Particularly

9   Appropriate Where The Other Pending Action Is A State Court Proceeding Involving

10  Issues Predominantly Of State Law.

11         Not only does binding Ninth Circuit precedent support dismissal of a "preemptive

12  strike" declaratory judgment action such as that filed by Ligand in favor of a separate

13  pending action for actual damages or coercive relief, and not only should a second-filed

14  declaratory action be dismissed in favor of a first-filed coercive action, but also the U.S.

15  Supreme Court has held that such dismissals are especially appropriate where the pending

16  state court action for coercive relief involves issues solely of state, not federal, concern.

17  The Supreme Court has held that "it would be *uneconomical* as well as *vexatious* for a

18  federal court to proceed in a declaratory judgment suit where another suit is pending in a

19  state court presenting the same issues, not governed by federal law, between the same

20  parties."  *See Brillhart*, 316 U.S. at 495; *see also Wilton*, 515 U.S. at 283 (reaffirming and

21  following *Brillhart*).  The Court specifically warned lower federal courts against

22  "[g]ratuitous interference with the orderly and comprehensive disposition of a state court

23  litigation" in such a situation, stating: "[w]e are concerned … with the duty of the federal

24  courts to determine legal issues governing the proper exercise of their jurisdiction."

25  *Brillhart,* 316 U.S. at 1176-77 (reversing and remanding the appellate court's direction

26  that the district court determine the merits of a declaratory judgment action).

27         The University's Complaint in New York presents issues solely of state law.  (*See*

28  Hakim Decl., Exhibit 1).  The allegations are premised on New York state law, as they

1   arise out of Ligand's breach of the 1992 Agreement.  The 1992 Agreement also provides

2   that this license is to be interpreted and governed according to New York state law.  The

3   University's Complaint and Ligand's California Declaratory Judgment Complaint, which

4   seeks a declaration as to how the 1992 Agreement should be interpreted, raise issues of

5   state law concern and do not implicate any federal law or interest.  Based on Ninth

6   Circuit and Supreme Court precedent, this Court should defer to the New York state court

7   and dismiss this declaratory action.  To hold otherwise would result in litigation in two

8   fora, which would be wasteful of the resources of the judiciary, the parties and their

9   counsel, and offend bedrock principles of federalism and comity between state and

10  federal courts.

11          Indeed, even where a declaratory action raises some federal issues, "where state

12  law concerns predominate," it is appropriate for a district court to apply the *Brillhart*

13  factors to the analysis.  *See Phoenix Assurance PLC,* 125 F. Supp. 2d at 1222 (referring

14  to declaratory judgment cases brought in admiralty and state claims; analyzing *Brillhart*

15  factors and declining jurisdiction under Declaratory Judgment Act).  The Ninth Circuit

16  has observed that the fact that state law remedies sought may tangentially involve issues

17  of patent ownership does not convert the state causes of action into federal law claims.[5]

18  *See Prize Frize, Inc. v. Matrix (U.S.) Inc.,* 167 F.3d 1261, 1264 (9th Cir. 1999) (citing

19  *Jim Arnold Corp. v. Hydrotech Systems, Inc.,* 109 F.3d 1567, 1572 (Fed. Cir. 1997))

20  *superseded* on other grounds by 28 U.S.C. § 1453(b) (changing law governing removal of

21  class actions).  Moreover, where a claim is supported by alternative theories in a

22  complaint, that claim does not form the basis for Section 1338(a) jurisdiction unless

23  patent law is essential to each of those theories.  *See Christianson v. Colt Indus.*

24  *Operating Corp.,* 486 U.S. 800, 807-08 (1988).  In other words, a tangential patent

25  allegation is not sufficient if the "clear gravamen of the complaint" sounds in contract.

26

27  [5] Pursuant to 28 U.S.C. §1338(a), federal courts have original, exclusive jurisdiction over civil actions relating to patents.  It is "well-settled" that if "a patentee pleads a cause of action based on rights created by a contract, . . . the case is not one 'arising under' the patent laws." *Jim Arnold Corp. v. Hydrotech*

28  *Sys., Inc.,* 109 F.3d 1567, 1572 (Fed. Cir. 1997)).

11

*Applera Corp. V. Illumina, Inc.,* 282 F.Supp.2d 1120, 1124 (N.D. Cal. 2003) (citing *Air Products & Chemicals, Inc. v. Reichhold Chemicals, Inc.,* 755 F.2d 1559, 1561 (Fed. Cir. 1985)). The significance of this precedent is two-fold: Not only does it mean that even if Ligand's Declaratory Judgment Complaint raises a mix of state and federal issues, it should still be dismissed in favor of the University's New York state case, but it also indicates that this Court lacks subject matter jurisdiction in this case under 28 U.S.C. §1338.[6]

There is extensive precedent holding that suits over failure to pay royalties under a license agreement brought in federal court fail to posit subject matter jurisdiction under 28 U.S.C. §1338(a). The analysis involves a determination as to whether the complaint pleads claims under the patent laws. Courts have consistently distinguished the latter from cases in which construction or enforcement of a contract or license is the issue, and for which state court, not federal court, subject matter jurisdiction lies. *See Luckett v. Delpark,* 270 U.S. 496, 510-11 (1926) ("Where a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, . . he does not give the federal district court jurisdiction of the case as one arising under the patent laws."); *Jim Arnold Corp.,* 109 F.3d 1567, 1578-79 (Fed. Cir. 1997) (remanding plaintiff's case to state court after improper removal because federal court did not have subject matter jurisdiction; holding that plaintiff's suit premised on state-law-based set of claims arising out of alleged breaches of the assignment agreements).

D.    Any Jurisdiction And/Or Venue Arguments Ligand May Seek To Raise In Connection With The New York State Suit, Are Properly Considered By New York Courts Rather Than This Court.

The Ninth Circuit has clearly stated that "[d]eclaratory relief is not authorized so that lower federal courts can sit in judgment over state courts, and it is not a substitute for

---

[6] In paragraph 10 of its Declaratory Judgment Complaint, Ligand asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1332, 1338 and 2201.

1  removal." *Exxon Shipping Co.*, 120 F.3d 166, 170 (9th Cir. 1997) (holding that district

2  court abused its discretion in granting declaratory relief to preempt a ruling on federal

3  law issues by state court); *Shell Oil Co. v. Frusetta,* 290 F.2d 689, 694 (9th Cir. 1961)

4  (declaratory relief not available because of "fears" that state court will not provide fair

5  trial; Congress provided for protection through removal statue, not Declaratory Judgment

6  Act); *H.J. Heinz Co. v. Owens,* 189 F.2d 505, 508 (9th Cir. 1951) ("The wholesome

7  purposes of declaratory acts would be aborted by its use as an instrument of procedural

8  fencing either to secure delay or to choose a forum.  It was not intended by the act to

9  enable a party to obtain a change of tribunal and thus accomplish in a particular case what

10 could not be accomplished under the removal act . . . ").  As a result, the Court should

11 decline any invitation by Ligand to deny this Motion based on an argument that the New

12 York court lacks jurisdiction -- Ligand's declaratory action is not the proper vehicle for

13 such a challenge.[7]  *Exxon,* 120 F.3d at 168 ("It should go without saying that a

14 declaratory judgment action must serve some purpose in resolving a dispute.  If the relief

15 serves no purpose, or an illegitimate one, then the district court should not grant it.").

16      Likewise, this Court should decline to adjudicate any venue arguments that Ligand

17 may raise, such as alleged inconvenience or hardship, in deference to the New York

18 court.[8]  *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 750 n. 6

19 (7th Cir. 1987) (venue contentions, "e.g. [the] contention that the claim arose in Illinois

20 [the jurisdiction in which the declaratory judgment action was filed] rather than

21 Connecticut [the other jurisdiction]," should be addressed by the court handling the

22 action for coercive relief, not the court in which the declaratory judgment action was

23 filed); *Trippe Mfg. Co. v. Am. Power Conversion Corp.,* 46 F.3d 624, 629 (7th Cir. 1995)

24

25 [7] Any such challenge to the New York court's jurisdiction would be futile.  The University's New York
26 Complaint leaves no doubt that the University's suit is premised on a state-law based set of claims arising out of an alleged breach of the 1992 Agreement.

27 [8] Any attempt to remove and then transfer the New York case to this Court would fail in any event, as
   there is no basis for federal question jurisdiction over the New York case and the transfer factors under 28
28 U.S.C. §1404 favor the University.

1  ("Trippe's venue arguments may properly be addressed to and decided by the Rhode

2  Island court, even though the action was first filed in Illinois.")  In any event, having filed

3  with the New York Department of State to do business in New York, Ligand should not

4  be permitted to argue that New York is not a convenient forum for litigation of this New

5  York-based license agreement with a New York university.

6  **II.      IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED.**

7        Pursuant to the clear precedent set forth above, the University believes that this Court

8  should decline to exercise jurisdiction over this declaratory action and dismiss the case.  The

9  University recognizes, however, that this Court has the inherent authority to stay this matter

10  pending the resolution of the New York state court litigation.  A federal court's power to stay

11  proceedings "is incidental to the power inherent in every court to control the disposition of the

12  causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

13  *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *see also Wilton,* 515 U.S. at 288-89 (district

14  court may use its discretion to stay or dismiss an action seeking a declaratory judgment).

15  Although the Court has the authority to stay this case until the final disposition of the New York

16  state litigation, the University believes that an order of dismissal is the preferred remedy, based

17  on the precedent set forth above, and because there is no advantage to a stay where the

18  disposition of the state court litigation will moot this action.

19  <u>CONCLUSION</u>

20        For the reasons set forth above, The Rockefeller University respectfully requests that this

21  Court dismiss this action or, in the alternative, stay this action in deference to the New York state

22  court's resolution of the University's litigation against Ligand Pharmaceuticals, Inc.

23

24  Dated:  March 11, 2008                           FOLEY & LARDNER LLP
                                                      KENNETH S. KLEIN

25

26                                                   By: /s/ _____

27                                                   KENNETH S. KLEIN
                                                     Attorneys for Defendant The Rockefeller

28                                                   University, a New York not-for-profit
                                                     corporation

14