**FOLEY & LARDNER LLP**
402 W. BROADWAY, SUITE 2100
SAN DIEGO, CA 92101-3542
TELEPHONE:    619.234.6655
FACSIMILE:    619.234.3510

KENNETH S. KLEIN, CA BAR NO. 129172

**FOLEY & LARDNER LLP**
3000 K STREET, NW - SUITE 500
WASHINGTON, DC 20007-5101
TELEPHONE:    202.672-5300
FACSIMILE:    202.672-5399

ANAT HAKIM, (admitted *pro hac vice*)

Attorneys for Defendant The Rockefeller University, a New York not-for-profit
corporation,

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ligand Pharmaceuticals Incorporated, a Delaware corporation<br><br>Plaintiff,<br><br>vs.<br><br>The Rockefeller University, a New York not-for-profit corporation,<br><br>Defendant. | Case No:  08-CV-401 BEN (WMc)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE ROCKEFELLER UNIVERSITY'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TRANSFER OR STAY THIS ACTION**<br><br>Judge:          Roger T. Benitez<br><br>Date:          June 2, 2008<br>Time:          10:30 a.m.<br>Courtroom:    3 |

# TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................ 7

I.    THE COURT SHOULD DISMISS THIS CASE .................................. 7

    A.    The Court Should Dismiss This California Declaratory Action. ................. 7

        1.    The Court, In Its Discretion, Should Dismiss This California Declaratory Action ......................................................... 7

        2.    The Court Should Dismiss This Declaratory Action Which Raises issues Of New York State Law Encompassed in the New York Action. .............................................................. 9

    B.    The Court Should Dismiss This Action For Lack Of Personal Jurisdiction ..................................................................... 10

    C.    The Court Should Dismiss This Action For Improper Venue ................... 13

    D.    The Court Should Dismiss This Action In Favor Of The Rockefeller University's First-Filed New York Action. ................................. 14

II.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK ................................ 15

    A.    The Southern District Of New York Is A Venue Where This Action Could And Should Have Been Brought ............................. 16

    B.    Transfer Of This Case to the Southern District of New York Is Proper Under the First-Filed Rule ....................................... 17

    C.    Transfer Is Proper Under The Section 1404(a) Factors ........................... 18

        1.    The Convenience of the Parties and Witnesses ............................... 19

        2.    The Interests of Justice ..................................................... 20

            a.    Location Where the Relevant Agreements Were Negotiated and Executed Favors New York ........................... 20

b.  New York is Most Familiar With Governing
New York Law.................................................20

c.  Plaintiff's Choice of Forum, The Parties' Contacts
With the Forum And Contacts Relating to Ligand's
Action In The Forum Favor Transfer....................20

d.  The Differences In the Costs of Litigation in the
Two Forums Favors Transfer...............................21

e.  The Availability of Compulsory Process to Compel
Attendance of Unwilling Non-Party Witnesses And The
Ease Of Access To Sources of Proof Favors Transfer..........22

f.  Judicial Economy Favors the Southern District of
New York.............................................23

CONCLUSION ................................................................ 23

SDCA_1079565.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Air Products & Chemicals, Inc. v. Reichhold Chemicals, Inc.*,
   755 F.2d 1559 (Fed. Cir. 1985)................................................................10

*A.J. Indus., Inc. v. United States Dist. Court for Cent. Dist.*,
   503 F.2d 384 (9th Cir. 1974) ..................................................................17

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) .............................................................14, 18

*Amerisourcebergen Corp. v. Roden*,
   495 F.3d 1143 (9th Cir. 2007) (Ferguson, J., concurring) .......................14

*Applera Corp. V. Illumina, Inc.*,
   282 F.Supp.2d 1120 (N.D. Cal. 2003) ......................................................10

*Breckenridge Pharm. Inc. v. Metabolite Labs., Inc.*,
   444 F.3d 1356 (Fed. Cir. 2006)................................................................12

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.m*
   2006 WL 4117032 (S.D. Cal. Nov. 24, 2006). ........................................14

*Cannon v. Newmar Corp.*,
   210 F.Supp.2d 461 (S.D.N.Y. 2002)........................................................18

*Cedars-Sinai Med. Ctr. v. Shalala*,
   125 F.3d 765 (9th Cir. 1997) .............................................................14, 17

*Chong v. Healthtronics, Inc.*,
   No. CV-06-1287, 2007 WL 1836831 (E.D.N.Y. June 20, 2007) ............18

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988).................................................................................10

*Church of Scientology of California v. United States Department of Navy*,
   611 F.2d 738 (9th Cir. 1979) ...................................................................14

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
   918 F.2d 1446 (9th Cir. 1990). ...............................................................17

*Continental Grain Co. v. The Barge FBL-585*,
   364 U.S. 19 (1960) .............................................................................15, 17

*Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*,
   472 F.Supp.2d 1183 (S.D. Cal. 2007)................................................22-23

SDCA_1079565.2

*Decker Coal Co. v. Commonwealth Edison Co.*
   805 F.2d 834 (9th Cir. 1986) ........................................................................16, 20

*Eye Laser Care Center v. MDTV Medical News Now, Inc.,*
   Case No. 03cv371, 2007 U.S. Dist. LEXIS 72744 (S.D. Cal. Sep. 28, 2007) ............ 15-16, 18

*Gehling v. St. George's School of Medicine, Ltd,*
   773 F.2d 539 (3d Cir. 1985)....................................................................11

*Genentech, Inc. v. Eli Lilly & Co.,*
   998 F.2d 931 (Fed. Cir. 1993) ..................................................................14

*Gov't  Employees Ins. Co. v. Dizol,*
   133 F. 3d 1220 (9th Cir. 1998) (en banc) ...................................................... 7-8

*Hanson v. Denckla,*
   357 U.S. 235 (1958) ...........................................................................11

*Hatch v. Reliance Ins. Co.,*
   758 F.2d 409 (9th Cir. 1985) ..................................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984)...........................................................................11

*Hoffman v. Blaski,*
   363 U.S. 335 (1960)...........................................................................16

*In Re Hall Bayoutree Associates Ltd.,*
   939 F.2d 802 (9th Cir. 1991) ..................................................................21

*Innovative Office Products, Inc. v. Ole Smed and Trade Mgmt.,*
   Case No. EDCV 07-192, 2007 U.S. Dist. LEXIS 76656 (C.D. Cal. Aug. 15, 2007)........ 12-13

*Intuitive Surgical, Inc. v. California Institute of Technology,*
   No. C07-0063-CW, 2007 U.S. Dist. LEXIS 31753 (N.D. Cal. April 18, 2007) ...................14

*Iyalla v. TRT Holdings, Inc.,*
   No. 04 Civ. 8114, 2005 WL 1765707 (S.D. N.Y. July 25, 2005) ........................................18

*Jim Arnold Corp. v. Hydrotech Sys., Inc.,*
   109 F.3d 1567 (Fed. Cir. 1997)....................................................................10

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000) ........................................................... 15-16, 20

*Langford v. Ameritanz,*
   2006 WL 1328223 (E.D. Cal. 2006)..........................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

*Luckett v. Delpark,*
　270 U.S. 496 (1926) ..................................................................................10

*Nakash v. Marciano,*
　882 F.2d 1411 (9th Cir. 1989) ...................................................................15

*Norris v. Oklahoma City University*
　1993 WL 313122　(N.D. Cal. August 3,1993)...........................................11

*Pacesetter Systems, Inc. v. Medtronic, Inc.,*
　678 F.2d 93 (9th Cir. 1982) ..............................................................14, 18

*Pacific Car and Foundry Co. v. Pence,*
　403 F.2d 949 (9th Cir. 1968) ...................................................................20

*Phoenix Assurance PLC,*
　125 F.Supp. 2d 1214 ..................................................................................9

*Photothera, Inc. v. Amir Oron,*
　2007 WL 4259181 (S.D. Cal. Dec. 4, 2007)...........................................7-8

*Prize Frize, Inc. v. Matrix (U.S.) Inc.,*
　167 F.3d 1261 (9th Cir. 1999) ...................................................................9

*Sackett v. Denver & R.G.W.R. Co.,*
　603 F.Supp. 260 (D.Colo) .......................................................................22

*Saleh v. Titan Corp.,*
　361 F.Supp.2d 1152 (S.D. Cal. 2005) ...............................................19, 23

*Schreiber v. Eli Lily and Co.,*
　2006 WL 782441 (E.D. Pa. March 27, 2006).........................................21

*Schwarzenegger v. Fred Martin Motor Co.,*
　374 F.3d 797 (9th Cir. 2004) .............................................................11-12

*Sinatra v. National Enquirer,*
　854 F.2d 1191 (9th Cir. 1988) ................................................................10

*Stainbrook v. Kent,*
　771 F.Supp. 988 (D.Minn. 1991).............................................................11

*Stewart Org v. Ricoh Corp.*
　487 U.S. 22 (1988)..................................................................................15

*Stewart v. Luedtke Engineering Company,*
　2006 WL 334644 (N.D. Cal. Feb. 10, 2006) ..........................................21

*Vitria Technology, Inc. v. Cincinnati Ins. Co.,*
　2005 WL 2431192, *3 (N.D. Cal. Sept. 30, 2005) ..................................22

v

SDCA_1079565.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wang v. L.B. International Inc.*,
   2005 WL 2090672 (W.D. Wash. Aug. 29, 2005). ..................................................21

*Williams v. Bowman*,
   157 F.Supp.2d 1103 (N.D. Cal. 2001) ..................................................20

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)..................................................15

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)..................................................11

**STATE CASES**

*Augsbury Corp. v. Petrokey Corp.*,
   470 N.Y.S.2d 787 (3d Dep't 1983) ..................................................18

**FEDERAL STATUTES**

28 U.S.C. §1338(a) ..................................................9-10

28 U.S.C. §1391..................................................13, 16

28 U.S.C. §1404(a) ..................................................15, 17-18

28 U.S.C. § 1453(b) ..................................................10

28 U.S.C. § 2201 ..................................................5, 7

28 U.S.C. § 2202 ..................................................7

**STATE STATUTES**

*Cal. Civ. Proc. Code* §410.10 (2007) ..................................................10

**RULES**

Fed. R. Civ. P. 12(b)(2)..................................................10

Fed. R. Civ. P. 12(b)(3)..................................................1, 13

Fed R. Civ. P. 12(b)(6)..................................................22

08-CV-401 BEN WMC

SDCA_1079565.2

The Rockefeller University (the "University") submits this memorandum in support of its motion to dismiss, or, in the alternative, to transfer or stay Plaintiff Ligand Pharmaceuticals, Inc.'s ("Ligand") declaratory action filed in this Court (the "California declaratory action"), in deference to the University's earlier filed action, originally in New York state court and recently removed to the U.S. District Court for the Southern District of New York (the "New York action").

Ligand's California declaratory action merits dismissal on four independent grounds:  (1) the University's New York action is the earlier filed and served matter; (2) Ligand's California suit under the Declaratory Judgment Act was a preemptive filing; (3) this Court does not have personal jurisdiction over the University; and (4) Ligand's venue allegations are improper under Rule 12(b)(3) of the Federal Rules of Civil Procedure.  In the alternative, Ligand's California declaratory action should be stayed, or transferred to the Southern District of New York.  In the New York action, which is the earlier filed and served matter, the University seeks damages and injunctive relief based on claims for breach of a September 30, 1992 License Agreement between the University and Ligand (the "1992 Agreement"), unjust enrichment/constructive trust, quantum meruit, specific performance of the University's contractual right under the 1992 Agreement to perform an audit of Ligand, and a declaration that certain products are subject to the terms and payment provisions of the 1992 Agreement.  The New York action and this California declaratory action involve the same state law issues of contract interpretation of the 1992 Agreement, which, by its terms, must be interpreted and governed according to New York law.  Furthermore, as discussed within, a number key witnesses are located in or near New York, and Ligand, having registered to do business in New York, is subject to personal jurisdiction of the New York court and cannot claim that New York is an inconvenient forum.  Finally, whereas Ligand in this action seeks a discretionary declaration of rights, the University in the New York action seeks damages for actual injury and in that context, a decision on the same issues Ligand raises here.  Under similar circumstances, the Ninth Circuit has affirmed the district courts' exercise of their

SDCA_1079565.2

discretion in dismissing, staying or transferring declaratory actions in favor of parallel proceedings involving the same issues (especially, where as here, the New York court regularly interprets and enforces contracts under New York law) and parties.

The University respectfully submits that there are ample reasons for this Court to dismiss this action, or in the alternative, to stay or transfer this action to the Southern District of New York. Ligand should not be permitted unnecessarily to expend the scarce resources of this Court to decide discretionary issues that necessarily will be addressed and decided in the New York Action and by continuing this action, expose the University to the possibility of inconsistent rulings.

## BACKGROUND

The Rockefeller University owns groundbreaking inventions that are powerful tools to screen for therapeutic drugs and that were discovered by Rockefeller University Professor James E. Darnell Jr. The University exclusively licensed these valuable inventions to Ligand under the 1992 Agreement. Working under a 1994 agreement with its exclusive sublicensee SmithKline Beecham ("SKB", now GlaxoSmithKline) ("1994 SKB/Ligand Agreement") and using the University's inventions, Ligand identified several pharmaceutical molecules and received several milestone payments from SKB. Ligand has failed to pay the University its contractual share of these milestone payments according to the 1992 Agreement, despite the University's repeated payment requests. Instead, in August 2007, shortly before SKB requested approval from the Food and Drug Administration of Promacta®, one of the pharmaceutical molecules identified under the 1994 SKB/Ligand Agreement, and before royalties on Promacta® are anticipated to be paid by SKB to Ligand, Ligand notified the University that Ligand was unilaterally terminating the 1992 Agreement, although not permitted to do so by the license's terms. The University, having fully performed its contractual obligation and faced with Ligand's refusal to honor its payment obligations under the 1992 Agreement, had no recourse but to file suit, and did so in New York State Court. (*See* Complaint filed in *The Rockefeller University v. Ligand Pharmaceuticals, Inc.,* Case No. 08/600638, filed at 9:02 a.m. EST

1    on March 4, 2008, in the Supreme Court of the State of New York in the County of New

2    York (hereinafter, the "New York Complaint"), attached as Exhibit 1 to the Declaration

3    of Anat Hakim ("Hakim Decl."), at pp. 1-2.)

4        Under Section 2.1 of the 1992 Agreement, the University granted Ligand a sole

5    exclusive world-wide license, under the broadly-defined Licensed Patent Rights and

6    Technical Information of the University "to make, have made, use and sell Products or

7    practice Processes." (*See* the 1992 License Agreement, attached as Exhibit 2 to the

8    Hakim Decl.)  The license related to pioneering technology, which the New York

9    Complaint describes in detail and which is referred to herein as the "STATs Pathway

10   technology."  The STATs Pathway technology was discovered by Professor Darnell.

11   Under Section 1.4 of the 1992 Agreement, the license grant to Ligand included an

12   exclusive world-wide license to all developments of Professor Darnell's laboratory

13   relating to the STATs Pathway technology, existing as of the effective date of the 1992

14   Agreement and for five years thereafter.  In connection with the 1992 Agreement,

15   Professor Darnell and members of his laboratory did in fact provide information to

16   Ligand for years regarding the STATs Pathway technology.  Over the course of several

17   years, Dr. Darnell provided essential technical information, materials and insight to

18   Ligand relating to the STATs Pathway technology.  In addition, the University filed

19   several patent applications and was issued several patents, describing aspects of its

20   pioneering STATs Pathway technology.  The technical information and expertise about

21   STATs Pathway technology acquired by Ligand from the University pursuant to the 1992

22   Agreement was essential to the development of, among other things, a high throughput

23   screen ("HTS") to identify cytokine agonists.  The HTS was key to the identification and

24   development of pharmaceutical drug candidates.  (*See* Hakim Decl., Exhibit 1 at ¶¶ 12

25   and 13).

26       In return for the University's exclusive world-wide license to this pioneering

27   STATs Pathway technology, Ligand obligated itself to:

28   ///

3

a. "diligently seek to develop Products and/or Processes" using or based on the STATs Pathway technology provided to it under the 1992 Agreement (Section 2.7 of the 1992 Agreement);

b. make certain cash payment to the University during the first five years of the Agreement and to give the University an equity interest in Ligand (Sections 2.2 and 2.3 of the 1992 Agreement); and

c. pay the University a portion of any payments Ligand received from any third party "to secure the right to use Technical Information or to sell Products or Processes," (Section 2.5 of the 1992 Agreement*)* and a royalty on Ligand's own "Net Sales of Products and on its net revenues . . . received from performance of Processes for a third party." (Section 2.4 of the 1992 Agreement).

(*See* Hakim Decl., Exhibit. 1 at ¶14, Exhibit 2).

The parties' dispute centers on the language of Sections 2.4 and 2.5 of the 1992 Agreement, which address Ligand's payment obligations as to the University's share of milestone and royalty payments from third parties (Section 2.5) and Ligand's royalty payment obligations to the University based on Ligand's own sales of Products or performance of Processes (Section 2.4). (*See* Hakim Decl., Exhibit *2*). In addition, the parties dispute whether Ligand's repeated attempts to terminate the 1992 Agreement first, on August 9, 2007 and then, on March 13, 2008, were effective. The University contends that neither termination is effective under the express termination provisions of the 1992 Agreement. (*See Id;* Ligand's March 13, 2008 letter of termination, attached as Exhibit 3 to the Hakim Decl.; and the University's March 17, 2008 letter rejecting Ligand's termination, attached as Exhibit 4 to the Hakim Decl.). Any judicial determination of these disputed contract terms will be made pursuant to New York law as the 1992 Agreement states that it "shall be interpreted and governed in accordance with the laws of

1  the State of New York."  (*See* Hakim Decl., Exh. 2, Section 13).

2       The parties have, for some time, engaged in discussions in an attempt to resolve

3  their dispute without litigation.  On October 10, 2007, the parties entered into a Tolling

4  Agreement, which was effective through January 31, 2008.  (*See* Hakim Decl., Exh. 1 at

5  ¶32).  On January 17, 2008, the parties amended the Tolling Agreement, extending the

6  period through March 3, 2008.  (*See Id.* at ¶34).  During these discussions, the

7  University's counsel informed Ligand's counsel that, absent a settlement, the University

8  would file suit against Ligand for breach of the 1992 Agreement after the Tolling

9  Agreement expired in order to preserve the University's claims.

10      Knowing that the University would file suit under that circumstance, Ligand filed

11 a Complaint for Declaratory Judgment in this Court at 11:33 a.m. EST (8:33 a.m. PST)

12 on March 4 (hereinafter, the "California Declaratory Judgment Complaint").[1]  Ligand's

13 California Declaratory Judgment Complaint contains three claims for relief, all under the

14 Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.  Specifically, Ligand seeks a

15 declaration as to (1) the applicability and scope of two defined terms in the 1992

16 Agreement ("Licensed Patent Rights" in Section 1.3 and "Technical Information" in

17 Section 1.4) as they apply to Ligand's payment obligations under Sections 2.4 and 2.5;

18 and (2) whether the 1992 Agreement has been terminated and the nature of any rights

19 terminated.  (*See* California Declaratory Judgment Complaint attached as Exhibit 5 to the

20 Hakim Decl.).  All of these are questions governed by New York State law.

21      A few hours before Ligand filed its California Declaratory Judgment Complaint,

22 the University filed the New York Complaint in New York State court on March 4.  On

23 March 4, the University completed service of process on Ligand's New York agent.  Two

24 days later, on March 6, the University was served with Ligand's California Declaratory

25 Judgment Complaint.  On March 14, 2008, Ligand filed a Notice of Removal, removing

26

27 [1] Solely for the purposes of this Motion to Dismiss, or in the Alternative, Transfer or
   Stay, the University will treat the allegations that Ligand made in its California
28 Declaratory Judgment Complaint as if they were true.

1    the University's New York State case to the District Court in the Southern District of

2    New York.  (*See* Ligand's March 14, 2008 Notice of Removal, attached as Exhibit 6 to

3    the Hakim Decl.).  On March 21, 2008, Ligand filed a Motion to Dismiss, or, in the

4    Alternative, to Transfer the New York action to this Court.  (*See* Ligand's March 21,

5    2008 Motion, attached as Exhibit 7 to the Hakim Decl.).

6         The Southern District of New York is the proper forum to determine the parties'

7    contract dispute.  The Southern District of New York routinely applies and interprets

8    New York law, as required here under the 1992 Agreement.  The University is a New

9    York not-for-profit education corporation, with its principal place of business in New

10   York City, New York.  (*See* Declaration of James Lapple ("Lapple Decl.'), ¶3).  Ligand,

11   a for-profit company, has voluntarily registered to do business in New York.  (*See* Hakim

12   Decl. Exh. 7 at Exh. D)  Professor Darnell, who is 82 years old and a key witness for the

13   University, resides and works in New York.  Certain key former members of Dr.

14   Darnell's laboratory, including Dr. David Levy, currently at NYU, and others, who

15   worked on the pioneering STATs Pathway technology with Dr. Darnell and were

16   involved in providing information to Ligand under the 1992 Agreement continue to work

17   in New York.  These third parties, who are not subject to the subpoena power of the

18   Southern District of California, would testify about critical early meetings with and

19   information provided to Ligand by the University under the 1992 Agreement.  Other

20   third-party witnesses, including William Griesar, who resides in Maine, and who was

21   involved in the negotiations of the 1992 Agreement, would also be expected to testify.

22   Still another locus of key third-party witness, SKB, Ligand's exclusive sublicensee under

23   the 1992 Agreement, is located on the East Coast, in Philadelphia, not far from New

24   York.  SKB witnesses, all third-parties, are expected to be key witnesses regarding the

25   University-licensed technology that was involved in the identification and development

26   of Promacta® and other products in the pipeline.  Unlike the Southern District of

27   California, these third-parties are either subject to the subpoena power of the Southern

28   District of New York, and in any event, New York is a far more convenient forum for

6

these potential witnesses.  In addition, the New York action will resolve not only the

contract issues under New York law and actual damages sought by the University but

also the issues raised by Ligand in this California declaratory action.  These factors and

others discussed below warrant dismissal of this case, or, in the alternative, a stay or

transfer of this lawsuit to the Southern District of New York.

## ARGUMENT

## I.    THE COURT SHOULD DISMISS THIS CASE

### A.    The Court Should Dismiss This California Declaratory Action.

Ligand's complaint requests only declaratory relief under the Declaratory

Judgment Act, 28 U.S.C. § 2201.[2]  This statute confers discretionary jurisdiction and

provides that a district court "may declare the rights and other legal relations of any

interested party seeking such declaration."  *Id.*  A lawsuit seeking federal declaratory

relief must pass constitutional muster by presenting an actual case or controversy and

must fulfill statutory jurisdictional prerequisites.  *See Gov't Employees Ins. Co. v. Dizol,*

133 F. 3d 1220, 1222-23 (9th Cir. 1998) (en banc).  Entertaining the declaratory

judgment action must be "appropriate."  *See Id.* at 1223.

### 1.    The Court, In Its Discretion, Should Dismiss This California Declaratory Action

It is established law that federal district courts have discretion to decline to hear a

declaratory judgment action, even though jurisdiction is otherwise proper.  *Photothera,*

*Inc. v. Amir Oron,* no. 07CV490, 2007 WL 4259181 at *2 (S.D. Cal. Dec. 4, 2007)

("[u]nder the Declaratory Judgment Act, 28 U.S.C. Section 2201, et seq., a district court

may decline to exercise jurisdiction over a declaratory action, even though subject matter

---

[2] The Declaratory Judgment Act, 28 U.S.C. Section 2201-02 states, in relevant part, that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

08-CV-401 BEN WMC

SDCA_1079565.2

jurisdiction is otherwise proper."); *Dizol*, 133 F.3d at 1223 (explaining that it is within the district court's discretion to determine whether a declaratory action is appropriate).[3] According to the Ninth Circuit, factors articulated by the Supreme Court in *Brillhart* "remain the philosophic touchstone for the district court" when it is deciding whether to hear a declaratory judgment action:

> The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. . . .

*Dizol,* 133 F.3d at 1225 (discussing *Brillhart* factors). In addition to the *Brillhart* factors, the Ninth Circuit points to other considerations, such as:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Id.* n. 5 (citation omitted).

A court can decline jurisdiction if it determines, for example, that the declaratory action was filed "for an improper tactical purpose" such as, "to improve a bargaining position in ongoing negotiations" or "to anticipate an affirmative defense." *Photothera,*

---

[3] The University disputes Ligand's assertion in its California Declaratory Judgment Complaint that this Court has federal question jurisdiction.

2007 WL 4259181 at *3. In this case, it appears that the only reason that Ligand filed this declaratory action was that it was forewarned by the University that the University would file suit against Ligand to preserve the University's claims after the Tolling Agreement expired. Ligand's filing of this declaratory action is an improper attempt at a preemptive strike in anticipation of the University's action for actual damages.

2. **The Court Should Dismiss This Declaratory Action Which Raises Issues Of New York State Law Encompassed in the New York Action.**

The New York Complaint presents issues of New York State law relating to Ligand's breach of the 1992 Agreement. (*See* Hakim Decl., Exh. 1). The 1992 Agreement provides that this license is to be interpreted and governed according to New York State law. (*See* Hakim Decl., Exh. 2). Ligand's California Declaratory Judgment Complaint, which seeks a declaration as to how the 1992 Agreement should be interpreted, also raises issues to be decided under New York State, not federal, law. Based on established precedent, this Court should dismiss this declaratory action in deference to the more comprehensive New York action, to avoid litigation in two fora that would waste the resources of the judiciary and the parties.

Indeed, even where a declaratory action raises some federal issues, "where state law concerns predominate," it is appropriate for a district court to apply the *Brillhart* factors to the analysis. *See Phoenix Assurance PLC v. Marimed Found. for Island Health Care,* 125 F. Supp. 2d 1214, 1222 (D.C. Haw.) (referring to declaratory judgment cases brought in admiralty and state claims; analyzing *Brillhart* factors and declining jurisdiction under Declaratory Judgment Act). The Ninth Circuit has noted that tangential issues of patent ownership do not convert a state cause of action into a federal law claim.[4] *See Prize Frize, Inc. v. Matrix (U.S.) Inc.,* 167 F.3d 1261, 1264 (9th Cir.

---

[4] Pursuant to 28 U.S.C. §1338(a), federal courts have original, exclusive jurisdiction over civil actions relating to patents. It is "well-settled" that if "a patentee pleads a cause of action based on rights created by a contract, . . . the case is not one 'arising under' the patent laws." *Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567, 1572 (Fed. Cir. 1997).

9

SDCA_1079565.2

1999) (citing *Jim Arnold Corp v. Hydrotech Systems, Inc.,* 109 F.3d. 1567, 1572 (Fed. Cir. 1997)) *superseded* on other grounds by 28 U.S.C. § 1453(b) (changing law governing removal of class actions). In other words, a tangential patent allegation is not sufficient if the "clear gravamen of the complaint" sounds in contract. *Applera Corp. V. Illumina, Inc.,* 282 F.Supp.2d 1120, 1124 (N.D. Cal. 2003) (citing *Air Products & Chemicals, Inc. v. Reichhold Chemicals, Inc.,* 755 F.2d 1559, 1561 (Fed. Cir. 1985)).

There is extensive precedent holding that suits over failure to pay royalties under a license agreement brought in federal court fail to posit subject matter jurisdiction under 28 U.S.C. §1338(a). The analysis involves a determination as to whether the complaint pleads claims under the patent laws and courts have consistently distinguished patent matters from cases in which construction or enforcement of a contract or license is the issue. *See Luckett v. Delpark,* 270 U.S. 496, 510-11 (1926) ("Where a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, . . he does not give the federal district court jurisdiction of the case as one arising under the patent laws."); *Jim Arnold Corp.*, 109 F.3d at 1578-79 (remanding plaintiff's case to state court and finding that suit was premised on state-law-based set of claims arising out of alleged breaches of the assignment agreements). Indeed, a claim supported by alternative theories in a complaint does not form the basis for Section 1338(a) jurisdiction, unless patent law is essential to each of those theories. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 807-08 (1988). Thus, this Court, in its discretion, should decline to exercise jurisdiction over this action.

**B.      The Court Should Dismiss This Action For Lack Of Personal Jurisdiction**

The University moves to dismiss this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure. California's long-arm statute extends as far as federal due process limitations allow. *See Cal. Civ. Proc. Code* §410.10 (2007); *Sinatra v. National Enquirer,* 854 F.2d 1191, 1194 (9th Cir. 1988). In order for a court to exercise personal

1  jurisdiction over a nonresident defendant, the defendant must have "minimum contacts"

2  with the forum state "such that the exercise of jurisdiction does not offend traditional

3  notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson,*

4  444 U.S. 286, 291-92 (1980). Personal jurisdiction may be either general or specific.

5  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).

6      This Court lacks general jurisdiction over the University which does not engage in

7  continuous and systematic contacts with California. *Schwarzenegger,* 374 F.3d at 801

8  ("[f]or general jurisdiction to exist over a nonresident defendant, the defendant must

9  engage in "continuous and systematic general business contacts" that "approximate

10  physical presence" in the forum state.") (quoting *Helicopteros Nacionales de Colombia,*

11  *S.A. v. Hall,* 466 U.S. 408, 416 (1984)). The University is a New York not-for-profit

12  education corporation. The University has no office, solicits no business, and has no

13  employees in California. The University does not sell or advertise any goods or services.

14  The University maintains no telephone listing or mailing addresses in the State of

15  California. (*See* Lapple Decl. at ¶¶3-9). In determining personal jurisdiction, courts have

16  historically recognized the unique nature of universities and have declined to entertain

17  personal jurisdiction even where a university has some contacts with the forum, which is

18  not the case here. *See Norris v. Oklahoma City University*, no. C-93-1626-VRW, 1993

19  WL 313122, *1-2 (N.D. Cal. August 3,1993) (finding no general jurisdiction over

20  university despite some contacts in the forum) (citing *Gehling v. St. George's School of*

21  *Medicine, Ltd*, 773 F.2d 539, 542-43 (3d Cir. 1985); *Stainbrook v. Kent*, 771 F.Supp. 988,

22  991 (D.Minn. 1991 (non-forum university's contacts with the forum were negligible and

23  unrelated to the litigation)). The University should not be brought into this Court under

24  general jurisdiction principles.

25      This Court likewise lacks specific jurisdiction because Ligand's claims do not

26  arise out of University business transacted in California. In other words, the University

27  did not purposely avail itself of the privilege of conducting activities within California,

28  and has thus not invoked the benefits and protections of its law. *See Hanson v. Denckla,*

357 U.S. 235, 253 (1958).  To establish specific jurisdiction over the University, it would have to be shown that the University directed its activities towards residents of California, that these activities arise out of or relate to the declaratory causes of action, and that the exercise of jurisdiction over the University would be reasonable. *Schwarzenegger,* 374 F.3d at 802 (setting forth three-prong test).

The 1992 Agreement entitles the University to receive milestone and royalty payments in exchange for the exclusive world-wide license to Ligand of STATs Pathway technology.  The parties' dispute arose because Ligand refuses to pay the University the payments due to it under the 1992 Agreement.  The core issue in this lawsuit and the lawsuit pending in the Southern District of New York is the University's entitlement to payments from Ligand.  The Federal Circuit and courts in this Circuit, have held that where the license contemplates a relationship that involves the mere receipt of royalty payments by the licensor, the licensor is not subject to personal jurisdiction in the forum state where the licensee conducts business.  *Innovative Office Products, Inc. v. Ole Smed and Trade Mgmt.,* Case No. EDCV 07-192, 2007 U.S. Dist. LEXIS 76656 at *14 (C.D. Cal. Aug. 15, 2007) (citing *Breckenridge Pharm. Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1366 (Fed. Cir. 2006)).  "In determining whether personal jurisdiction over the licensor exists, the court must consider whether the license agreement creates an ongoing relationship between the licensor and licensee such that the activities of the latter can be imputed to the former."  *Innovative Office Products,* 2007 U.S. Dist. LEXIS 76656 at *14.  Whether such a relationship can be imputed is dependent on certain factors, none of which are found here, such as, for example, whether both licensor and licensee have the right to litigate infringement claims; whether the licensor retains the exclusive right to pursue patent infringement claims; whether the licensor exercises control over the licensee's sales or marketing activities; whether the licensor authorizes the licensee to use the licensor's trademarks in marketing or distributing the product; and whether the licensee must obtain prior approval from the licensor before making any representations regarding the licensor's products in any of the licensee's marketing activities.  *Id. a*t *15-

SDCA_1079565.2

20(citing cases).  The 1992 Agreement does not include such hallmarks of control by the University, but rather is based on the University's right to receive payments.  This Court should not exercise specific jurisdiction here.

In addition to all of the above, exercising personal jurisdiction in this case would simply be unreasonable.  *See Id.* at *22.  As discussed below, the burden on the University of litigating this case in San Diego would be significant.  Moreover, Ligand could obtain relief in the Southern District of New York where it would likely assert its declaratory causes of action as affirmative defenses and/or counterclaims.[5]  Likewise, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is best served by proceeding in New York, where the action is for actual as opposed to declaratory relief.

## C.    The Court Should Dismiss This Action For Improper Venue

Ligand alleges that this Court has subject matter jurisdiction based on both diversity and federal question jurisdiction yet Ligand erroneously pleads venue under 28 U.S.C. §1391(a), which is applicable where subject matter jurisdiction is based "only on diversity of citizenship."  In any event, Ligand cannot meet the venue requirements under Section 1391(a) or (b).  The University does not reside in California and is neither subject to personal jurisdiction nor "found" there.  In addition, events and omissions giving rise to the claim occurred in both New York and San Diego, but a *substantial* part of those events or omissions occurred outside of California, in New York where the licensed technology was developed, and the University believes, at SKB in Philadelphia as well, where research, identification and development of Promacta® occurred.  Dismissal under Fed. R. Civ. P. 12(b)(3) is therefore appropriate.

///

///

_____

[5] As set forth below, Ligand's challenge to personal jurisdiction in the Southern District of New York will fail at the starting gate in light of the fact that Ligand is registered to do business in New York.

08-CV-401 BEN WMC

SDCA_1079565.2

**D.    The Court Should Dismiss This Action In Favor Of The Rockefeller University's First-Filed New York Action.**

The Ninth Circuit acknowledges the "first-to-file" rule as a "generally recognized doctrine of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95-96 (9th Cir. 1982*)* (citations omitted).  Under the rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.  *Amerisourcebergen Corp. v. Roden*, 495 F.3d 1143, 1156 (9th Cir. 2007) (Ferguson, J., concurring) (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)) (emphasis added); *Pacesetter*, 678 F.2d at 95.  Consistent with these principles, the Ninth Circuit has held that the first-to-file rule "should not be disregarded lightly." *Church of Scientology of California v. United States Department of Navy*, 611 F.2d 738, 750 (9th Cir. 1979) (citation omitted).

Three prerequisites that must be met to invoke the "first-to-file" rule are chronology, identical parties, and identical issues.  *See Brighton Collectibles, Inc. v. Coldwater Creek, Inc.,* no. CV-1848-H, 2006 WL 4117032 at *2 (S.D. Cal. Nov. 24, 2006) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 625 (9th Cir. 1991)).  There is no dispute here that the University has met all three prerequisites.  First, the University filed its lawsuit in New York nearly three hours before Ligand filed its declaratory action in this Court.  *See Intuitive Surgical, Inc. v. California Institute of Technology,* No. C07-0063-CW, 2007 U.S. Dist. LEXIS 31753 at *7-8 (N.D. Cal. April 18, 2007) (holding that first-to-file rule is applicable and requires deference to the first-filed court, notwithstanding that the two actions are filed a few hours apart); *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 938 (Fed. Cir. 1993) (policy rationale behind first-to-file rule is supported by reasons "just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the

SDCA_1079565.2

1    suits.") *overruled* on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289

2    (1995). Second, the parties in the New York and California actions are identical. Third,

3    the issues in the two suits are substantially similar or overlapping, with the New York

4    action encompassing issues raised in the California declaratory action. *See Nakash v.*

5    *Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (first to file rules applies where two

6    proceedings are "substantially similar" even though they are not identical). With the

7    three prerequisites met, the Court should decline jurisdiction over the case.

8    **II.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE**

9    **TO THE SOUTHERN DISTRICT OF NEW YORK**

10          Transfer of civil actions is governed by 28 U.S.C. §1404(a), which states:

11                For the convenience of parties and witness, in the interest of

12                justice, a district court may transfer any civil action to any

13                other district or division where it might have been brought.

14          Faced with a motion to transfer under Section 1404(a), the issue for the Court "is

15    whether or not the balance of convenience to the parties and witnesses and the interest of

16    justice would be served by the transfer." *Eye Laser Care Center v. MDTV Medical News*

17    *Now, Inc.,* Case No. 03cv371, 2007 U.S. Dist. LEXIS 72744 at *3 (S.D. Cal. Sep. 28,

18    2007) (J. Benitez). Section 1404 is intended to prevent waste of time, energy and money

19    and to protect litigants, witnesses and the public from unnecessary inconvenience and

20    expense. *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To

21    permit a situation in which two cases involving precisely the same issues are

22    simultaneously pending in different District courts leads to the wastefulness of time,

23    energy, and money that § 1404(a) was designed to prevent."). A decision to transfer an

24    action under Section 1404(a) rests within the sound discretion of the court and is made on

25    a case-by-case basis. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir.

26    2000) ("district court has discretion to adjudicate motions for transfer 'according to an

27    individualized, case-by-case consideration of convenience and fairness.'") (quoting

28    *Stewart Org v. Ricoh Corp.* 487 U.S. 22, 29 (1988)).

15

SDCA_1079565.2

In determining if an action should be transferred, courts undertake a two-step analysis. First, the court determines whether the case could have been brought in the proposed forum. *Hoffman v. Blaski*, 363 U.S. 335, 342-44 (1960); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Second the court determines whether the transfer would promote convenience and fairness weighing (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. When considering whether a transfer is in the interest of justice courts may consider: (1) the location where the relevant agreements were negotiated and executed ; (2) the state that is most familiar with the governing law ; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of the litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to the source of proof. *See Jones*, 211 F.3d at 498-99; *Eye Laser Care Center,* Case No. 03cv371, 2007 U.S. Dist. LEXIS 72744 at *3. Other public factors may be considered, including the "administrative difficulties flowing from court congestion." *Decker Coal Co. v. Commonwealth Edison Co*. 805 F.2d 834, 843 (9th Cir. 1986).

A.    **The Southern District Of New York Is A Venue Where This Action Could And Should Have Been Brought**

This California declaratory action could have been brought by Ligand in the Southern District of New York, which has subject matter jurisdiction based on diversity of citizenship,[6] personal jurisdiction over the University, and venue is proper there under 28 U.S.C. Section 1391. *Hoffman,* 363 U.S. at 343-44 (requiring existence of all three). The University resides and is located in the Southern District of New York; Ligand is subject to personal jurisdiction in the Southern District of New York; and a substantial

---

[6] Contrary to the statements Ligand made in its Notice of Removal of the New York action from New York State court to the Southern District of New York (Hakim Decl., Exh. 6), there is no basis for federal question jurisdiction.

SDCA_1079565.2

part of the events or omissions giving rise to the claim occurred in New York. As discussed below, this lawsuit not only could but should have been brought in New York.

**B.    Transfer Of This Case to the Southern District of New York Is Proper Under the First-Filed Rule**

Courts often exercise their authority under Section 1404(a) to transfer litigation to other districts in which previously filed related suits are pending in the interests of efficiency and judicial economy. *Cedar-Sinai Medical Center*, 125 F.3d at 769 (9th Cir. 1997) ("under [the first to file] rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay or dismiss the second case in the interest of judicial economy and efficiency). In fact, in the context of transfer motions, the Ninth Circuit considers such factors as the possibility of consolidation with related litigation and considerations relating to the real party in interest – which favor transfer in this instance. *A.J. Indus., Inc. v. United States Dist. Court for Cent. Dist*., 503 F.2d 384, 389 (9th Cir. 1974). The Supreme Court and the Ninth Circuit have held that there is a strong policy favoring the litigation of related claims in the same tribunal so that pretrial discovery can be conducted more efficiently, duplicative litigation can be prevented, thereby saving the time and expense for both parties and witnesses, and inconsistent results can be avoided. *Continental Grain Co.,* 364 U.S. at 26 (1960); *Contact Lumber Co. v. P.T. Moges Shipping Co*. Ltd, 918 F.2d 1446, 1452 (9th Cir. 1990) )(noting that there is a significant advantage in having all parties assert their claim in one forum.).

In its March 24, 2008 motion to dismiss or transfer, filed in New York, Ligand asserted that the Southern District of New York does not have personal jurisdiction over it. This assertion is baseless. In fact, based solely on its registration to do business in New York (and ignoring other extant bases for the New York court to exercise personal jurisdiction over Ligand), Ligand is subject to general personal jurisdiction in New York. It is established law that a foreign corporation's authorization to do business in New York and designation of an agent for service of process is consent to in personam jurisdiction.

*See Augsbury Corp. v. Petrokey Corp.*, 470 N.Y.S.2d 787, 789 (3d Dep't 1983) (citations omitted); *Iyalla v. TRT Holdings, Inc.*, No. 04 Civ. 8114, 2005 WL 1765707, at *3 (S.D. N.Y. July 25, 2005) ("Under New York law, any corporation registered to do business within the state is subject to personal jurisdiction in the state.") (citing *Cannon v. Newmar Corp.*, 210 F.Supp.2d 461, 463 n.2 (S.D. N.Y. 2002).[7] The University therefore asks this Court to transfer this case to the Southern District of New York so that it can be consolidated with the earlier filed New York action, and all issues relating to the 1992 Agreement can be heard by one court.

### C. Transfer Is Proper Under The Section 1404(a) Factors

Ninth Circuit law holds that the court in the earlier filed action normally should decide where an action should be heard.[8] The University therefore asks this Court to defer to the Southern District of New York in deciding the appropriate forum. If this Court goes forward with that determination, however, an analysis of the Section 1404(a) factors weighs heavily in favor of transferring this lawsuit to New York. *See Eye Laser Care Center,* Case No. 03cv371, 2007 U.S. Dist. LEXIS 72744 at *5 (transferring case that was pending for three years and after substantive motion practice had concluded).

///

///

---

[7] Although two district court decisions reached the contrary conclusion (one of which is the only case cited by Ligand in its brief in the Southern District of New York), the substantial majority of cases echo *Augsbury*. Indeed, subsequent New York district court decisions have expressly questioned the reasoning of the two contrary cases, and then reached the conclusion that filing for authorization to do business in New York is, by itself, sufficient to create personal jurisdiction. *See Chong v. Healthtronics, Inc.*, No. CV-06-1287, 2007 WL 1836831, at *6 n.5 (E.D. N.Y. June 20, 2007) ("*Wright* and *Bellepointe* are not persuasive in light of the majority of federal district courts and New York courts which hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction in New York.").

[8] The law in the Ninth Circuit is that the court with the first-filed action should normally weigh the balance of convenience. *Alltrade, Inc.,* 946 F.2d 622 at 628. As a result, this Court should not engage in a balancing of convenience factors but rather defer to the Southern District of New York to decide the appropriate forum and whether an exception to the first-to-file rule is applicable. *See Pacesetter Systems,* 678 F.2d at 96 (respective convenience of the two courts should be addressed to court in first-filed action).

08-CV-401 BEN WMC

SDCA_1079565.2

## 1.    The Convenience of the Parties and Witnesses

The Southern District of New York is a more convenient venue for the University and for non-party witnesses.  The University's principal place of business is in New York City.  Additionally, certain key non-party witnesses are located in or near New York.  While courts may consider the convenience of party witnesses, "***the convenience of non-party witnesses is the more important factor.***"  *Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1160-62 (S.D. Cal. 2005) (where four witnesses had material, first hand knowledge regarding the seminal issues in the case, and they lived near the district, that district would be a more convenient forum.) (emphasis added).  Here, New York is far more convenient for key witnesses, including Dr. Darnell, as well as non-party former members of his laboratory, non-parties that were involved in negotiations of the 1992 Agreement, and Ligand's exclusive sublicense SKB (in Philadelphia).  These individuals either work in New York, are subject to the subpoena power of the New York court or would be inconvenienced by this case proceeding in California.  When considering the location of non-parties, courts are instructed to examine the importance of the non-party witnesses as opposed to their sheer number.  *Id*. at 1164.  Given that the University provided critical information to Ligand in the early years of the 1992 Agreement – information that Ligand then sub-licensed to SKB and without which Ligand and SKB could not have developed the technology at issue – and that Dr. Darnell and a number of his former laboratory members were intimately and actively involved in developing and providing that information to Ligand, their testimony will be important .  Likewise, GSK, which is within 100 miles of New York City, is a material non-party witness.  To the extent that Ligand may provide a list of individuals it claims worked on the technology in dispute (as it has done in support of its motion in New York), Ligand has not shown that these individuals, mostly Ligand employees, worked on the critical aspects of the pharmaceutical molecules at issue in this case.  This factor favors New York.

///

///

2.    **The Interests of Justice**

a.    **Location Where the Relevant Agreements Were Negotiated and Executed Favors New York**

The parties' negotiations of the 1992 Agreement were largely conducted by mail or electronic means, as was the execution of the 1992 Agreement.  In the months leading up to the execution of the 1992 Agreement, however, Ligand representatives traveled to New York to discuss and obtain information about the technology that was ultimately to be licensed.  (Hakim Decl. Exh. 8).  This factor therefore slightly favors New York.

b.    **New York is Most Familiar With Governing New York Law**

Given that the 1992 Agreement is governed by New York law, considerations of which court is most familiar with the governing law strongly favors transferring this lawsuit to the Southern District of New York.  *See Decker Coal Co.*, 805 F.2d at 843 (9th Cir. 1986) (diversity case should be litigated in "a forum that is at home with the law that must govern the action."); see *Jones*, 211 F.3d at 498 (courts should choose the forum that is "the most familiar with the governing law").[9]

c.    **Plaintiff's Choice of Forum, The Parties' Contacts With the Forum And Contacts Relating to Ligand's Action In The Forum Favor Transfer**

A plaintiff's choice of forum is not dispositive.  *See Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  "If there is any indication that plaintiff's choice is the result of forum shopping, plaintiff's choice will be accorded little deference."  *Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001) (citation omitted).  Because Ligand's action was preemptive, second-filed, and constitutes improper forum shopping Ligand's choice should be accorded little deference.  In

_____

[9] While Ligand has attempted to portray this lawsuit as well as the suit pending in New York as involving patent issues, as discussed above, the fact is that the suits are breach of contract suits, governed by New York State law.

addition, because there is a question about whether this Court has personal jurisdiction over the University, transfer (or dismissal) is appropriate.  See *e.g. Stewart v. Luedtke Engineering Company*, no. C 05-3467 SBA, 2006 WL 334644 at * 5 (transfer of case is appropriate where court lacks personal jurisdiction over plaintiff) (N.D. Cal. Feb. 10, 2006);   *In Re Hall Bayoutree Associates Ltd*., 939 F.2d 802, 805-06 (9th Cir. 1991) (dismissal appropriate where plaintiff's action is brought in bad faith).

Likewise, as set forth above, the University's contacts with California do not support keeping this case in this Court.  In contrast, Ligand is registered to do business in New York and has apparently been doing business in New York for years.  (Hakim Decl., Exh. 8 at Exh. C ¶10).  Moreover, the fact that the University is a New York not-for-profit education corporation with its principal place of business in New York and that the exclusively licensed technology was developed in Dr. Darnell's lab in New York, favors transfer to New York.

### d.    The Differences In the Costs of Litigation in the Two Forums Favors Transfer

For the University, the cost difference between trying this case in the Southern District of New York as compared to the Southern District of California will be significant.  The University is a not-for-profit education corporation, with a focus on biomedical research.  The increased cost of litigating in San Diego would have a significant financial and non-financial impact for the University.  In contrast, Ligand is a public biotech company, with major corporate partners, that can litigate in any federal district court in the country.  *See Schreiber v. Eli Lily and Co*., no. 05CV2616, 2006 WL 782441 at *9 (E.D. Pa. March 27, 2006) (holding that corporation is better able to incur the costs of litigating in a foreign venue then a not-for-profit university); *Wang v. L.B. International Inc.*, no. C04-2475JLR, 2005 WL 2090672 *5 (W.D. Wash. Aug. 29, 2005) (holding that under the reduced cost of litigation prong defendant's increased costs in securing witnesses, transporting documents, records, and other evidence to district outweighed plaintiffs costs in coming to transferee district).  It is likely unavoidable that

21

SDCA_1079565.2

1   one of the parties will incur substantial costs whether this case is tried in New York or

2   San Diego, but this factor tips in favor of transfer to New York.

3                    e.      **The Availability of Compulsory Process to Compel**

4                            **Attendance of Unwilling Non-Party Witnesses And The**

5                            **Ease Of Access To Sources of Proof Favors Transfer**

6           Courts favor forums "where non-party witnesses will fall under the court's

7   subpoena power." *Langford v. Ameritanz*, no. F 05-1271 AWI DLB, 2006 WL 1328223

8   at *9 (E.D. Cal. 2006) ((citing *Sackett v. Denver & R.G.W.R. Co.*, 603 F.Supp. 260, 262

9   (D.Colo); *See Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F.Supp.2d 1183,

10  1194 (S.D. Cal. 2007). "For non-party witnesses, the court's subpoena power extends to

11  anywhere within the district and/or one hundred miles of the place of trial." *Costco*, 472

12  F.2d at 1194 (citing Fed R. Civ. P. 12(b)(6)). As discussed, above, critical third party

13  witnesses reside in New York City or within subpoena range of the Southern District of

14  New York and would be beyond this court's subpoena power. *See Id.* (holding that

15  where witnesses who were beyond the court's subpoena power were only parties who

16  could provide critical testimony, forum in that court's district was not proper.). In

17  contrast, the vast majority of Ligand's witnesses are Ligand employees for whom

18  compulsory process is not needed because "a party can compel testimony of its

19  employees at trial." *Id.* (citation omitted). This factor favors the University.

20          With respect to the location of relevant documents and ease of access to sources of

21  proof, the University's documents are located in New York, as are documents in the

22  custody and control of the third parties discussed above. Given the availability of

23  electronic means for document collection and production, however, the physical location

24  of documents is a less significant factor in the transfer analysis. *See Vitria Technology,*

25  *Inc. v. Cincinnati Ins. Co*, no. C. 05-1951 JW, 2005 WL 2431192, *3 (N.D. Cal. Sept. 30,

26  2005).

27  ///

28  ///

**f.    Judicial Economy Favors the Southern District of New York**

"In addition to the Jones factors, courts also consider the relative docket congestion of the current forum and the transferee forum."  *Costco*, 472 F.Supp.2d at 1195 (S.D. Cal. 2007).  The inquiry under this factor is "whether a trial may be speedier in another court because of its less crowded docket."  *Saleh*, 361 F.Supp.2d at 1167 (citation omitted).  Given the heavy criminal case docket in this Court, the time to trial in the Southern District of New York is likely to be faster.  This factor also weighs in favor of transfer to New York.

## CONCLUSION

For the reasons set forth above, The Rockefeller University respectfully requests that this Court dismiss this action, or, in the alternative, stay this action or transfer it to New York.

Dated:  April 1, 2008

FOLEY & LARDNER LLP
KENNETH S. KLEIN
ANAT HAKIM


By:    s/ Kenneth S. Klein_____
KENNETH S. KLEIN
Attorneys for Defendant The Rockefeller University, a New York not-for-profit corporation.

08-CV-401 BEN WMC

SDCA_1079565.2