COPY

FILED
MAR 0 4 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  Darrell Olson (State Bar No. 77633)
   KNOBBE, MARTENS, OLSON & BEAR, LLP
2  2040 Main Street
   Fourteenth Floor
3  Irvine, CA 92614
   Phone: (949) 760-0404
4  Facsimile: (949) 760-9502

5  Joseph M. Reisman (State Bar No. 246922)
   Ali S. Razai (State Bar No. 196122)
6  KNOBBE, MARTENS, OLSON & BEAR, LLP
   550 West C Street
7  Suite 1200
   San Diego, CA 92101
8  Phone: (619) 235-8550
   Facsimile: (619) 235-0176

10 Attorneys for Plaintiff
   LIGAND PHARMACEUTICALS INCORPORATED

13            IN THE UNITED STATES DISTRICT COURT

14         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

17 _____
                                        )   '08 CV 4 0 1  BEN WMc
18 LIGAND PHARMACEUTICALS               )   Civil Action No.
   INCORPORATED, a Delaware corporation,)
19                                      )   **COMPLAINT FOR DECLARATORY**
          Plaintiff,                    )   **JUDGMENT**
20                                      )
          v.                            )
21                                      )
   THE ROCKEFELLER UNIVERSITY, a        )
22 New York not-for-profit corporation, )
                                        )
23        Defendant.                    )
   _____  )
24

## I. NATURE OF THE ACTION

1.  This is a civil action under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., for declaration of rights between the parties under a License Agreement dated September 30, 1992 ("License Agreement," attached as Exhibit A and incorporated by reference) and under certain United States patents related to the License Agreement.

## II. PARTIES

2.  Plaintiff LIGAND PHARMACEUTICALS INCORPORATED (hereinafter "Ligand" or "Plaintiff") is a Delaware corporation with its principal place of business at 10275 Science Center Drive San Diego, California 92121.

3.  Ligand was incorporated in 1987 and since then has been engaged in, *inter alia*, the research and development of drugs for various diseases and disorders. Ligand currently has less than sixty (60) employees.

4.  Defendant THE ROCKEFELLER UNIVERSITY (hereinafter "Rockefeller" or "Defendant") is a New York not-for-profit corporation with its principal place of business at 1230 York Avenue, New York, New York 10021.

5.  Rockefeller is a university periodically engaged in research and development. Rockefeller currently has 69 heads of laboratories, 200 research and clinical scientists, 350 postdoctoral investigators, 1,050 support staff, 150 Ph.D. students, 50 M.D.-Ph.D. students and 960 alumni according to the Rockefeller website.

6.  NEW YORK UNIVERSITY ("NYU") is a New York not-for-profit corporation with its principal place of business at 70 Washington Square S, New York, New York 10012.

7.  NYU is a university periodically engaged in research and development. NYU is not a party to the License Agreement or this lawsuit, but in the past it has received payments due to it under the License Agreement.

## III. JURISDICTION AND VENUE

8.  This Court has personal jurisdiction over Defendant Rockefeller by virtue of its presence and activities in the state of California, including but not limited to entering into

-1-
Exhibit "5"
65

the License Agreement, as rights granted by the License Agreement were to be used in this judicial district, its past ownership interest in Ligand (located in this judicial district) under the License Agreement, as well as activities of Dr. James E. Darnell ("Darnell") in performing services in this judicial district under a Professional Services Agreement ("Services Agreement") dated September 30, 1992.

9. NYU is not being joined in this lawsuit for the following reasons. It is not a party to the License Agreement. Its interests under the License Agreement are subordinate to those of Rockefeller and, on information and belief, those interests are adequately protected by Rockefeller. Finally, Rockefeller, not NYU, is the owner of any intellectual property rights licensed under the License Agreement.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, 1338 and 2201.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c).

## IV. TECHNOLOGY

12. Since its inception, and prior to entering into the License Agreement with Rockefeller, Ligand has been actively involved in small molecule drug discovery. For example, Ligand owns intracellular receptor ("IR") technology that relates to families of transcription factors that change cell function by selectively turning on or off specific genes in response to circulating signals that act on cells. Ligand developed (and/or in-licensed from one or more sources other than Rockefeller) certain IR-based transcriptional assays to screen candidate drugs.

13. Thrombopoietin ("TPO") is a peptidyl hormone that activates a signaling cascade in a cell by binding to a receptor on a cell surface. Once bound by TPO, the cell surface receptor initiates a signaling cascade from the cell surface to the nucleus, where specific genes are selectively turned on in response to TPO. This gene regulation is mediated by transcription factors activated by the TPO signaling cascade and has a major effect on cell fate decisions by regulating cell proliferation and differentiation.

14. Ligand developed cell-based assays to screen candidate TPO mimics. These assays included cell proliferation and cell differentiation assays, as well as transcriptional assays. The transcriptional assays developed by Ligand to screen candidate TPO mimics were analogous to the transcriptional assays developed for Ligand's IR program.

15. The transcriptional assays involved use of a reporter construct with produces a signal in response to activated transcription factors in the cell.

16. Ligand's assays were used to discover and develop new drugs that mimic the action of TPO and may be useful in the treatment of a wide variety of diseases and disorders.

## V. FACTUAL BACKGROUND

17. Darnell served on Ligand's Scientific Advisory Board for several years and visited with Ligand scientists at Ligand's facilities and elsewhere in San Diego many times in connection with the License Agreement and/or the Services Agreement.

18. On information and belief, at all times relevant here to, Darnell acted in conjunction with Rockefeller and had authority to act on behalf of Rockefeller to fulfill Rockefeller's obligations under the License Agreement.

19. After negotiations between the parties, Ligand executed two separate agreements on September 30, 1992, the License Agreement with Rockefeller and the Services Agreement with Darnell.

20. The License Agreement was generally directed to the licensing of "Licensed Patent Rights" and "Technical Information" relating to peptidyl hormone mediated gene expression.

21. The Licensed Patent Rights are defined in Section 1.3 of the License Agreement to be patent applications identified in Exhibit A to the License Agreement, related "divisionals, continuations, continuations-in-part, reissues, renewals, foreign counterparts, extension or additions," and any patents which may issue thereon. (Section 1.3, License Agreement).

22. Rockefeller is the identified assignee of United States patents, including: U.S. Pat. No. 6,605,442; U.S. Pat. No. 5,976,835; U.S. Pat. No. 6,013,475; U.S. Pat. No.

6,030,808; U.S. Pat. No. 6,338,949; U.S. Pat. No. 6,124,118; U.S. Pat. No. 7,060,682; U.S. Pat. No. 5,716,622; U.S. Pat. No. 5,883,228; U.S. Pat. No. 6,030,780; U.S. Pat. No. 6,720,154; U.S. Pat. No. 7,115,567; U.S. Pat. No. 6,960,647; and U.S. Pat. No. 7,211,655 ("Rockefeller Patents" attached as Exhibits B through O), which all either claim priority back to the patent applications listed in Exhibit A to the License Agreement or relate to what Rockefeller argues is Technical Information under the License Agreement.

23. Technical Information is defined in Section 1.4 of the License Agreement to include "technical data, information processes, materials and know-how, whether or not patentable" relating to peptidyl mediated gene expression that is owned by Rockefeller and was developed as of the effective date of the License Agreement or during the next five (5) years. (Section 1.4, License Agreement).

24. The License Agreement between Ligand and Rockefeller contemplated that certain of the intellectual property of Rockefeller might be used by Ligand in development of new pharmaceutical agents. (Sections 2.4 and 2.5, License Agreement). Nothing in the License Agreement prohibited Ligand from developing processes and products relating to cell-based assays to screen candidate drugs independent of Rockefeller's intellectual property, as Ligand had done previously with its IR technology.

25. Independent of the rights acquired under the License Agreement, on December 29, 1994, Ligand entered into a Research Development and License Agreement ("GSK License") with SmithKline Beecham Corporation, now GlaxoSmithKline ("GSK"). The GSK License relates to a joint research and development effort by Ligand and GSK directed to discovery of small molecule compounds which act as modulators of certain HEMATOPOIETIC GROWTH FACTORS (including TPO, as defined in Section 1.17 of the GSK License) and to develop pharmaceutical products from such compounds.

26. On information and belief, Rockefeller has been aware of the GSK License since it was signed by Ligand and GSK in 1994.

27. Under the RESEARCH PROGRAM as defined in the GSK License, a cell-based high throughput screen was developed by Ligand to help identify at least one

potentially useful drug known as eltrombopag or PROMACTA® and a back-up thereto known as SB-559448 ("GSK Products"). Under the GSK License, GSK has paid Ligand milestone payments amounting to $8 million for achieving certain milestones under the GSK License.

28.  GSK has made significant progress toward gaining approval for at least one of the GSK Products through the regulatory process before the Food and Drug Administration.

29.  As early as October 2003, Rockefeller became specifically aware of the GSK Products and inquired about and demanded payment from Ligand under the License Agreement for what Rockefeller alleged were uses of its Licensed Patent Rights or Technical Information covered by the License Agreement.

30.  Ligand disputes that the GSK Products are subject to payments under the License Agreement.

31.  Section 2.5 of the License Agreement obligates Ligand to pay Rockefeller only under certain circumstances. The payments described in Section 2.5 generally are twenty five per cent (25%) of payments received from third parties by Ligand if those payments were to secure the right to use Technical Information or the right to sell Products or Processes.

32.  The GSK Products are not Products as the term "Product" is defined under Section 1.5 of the License Agreement. They do not embody or use any invention described or claimed in the Licensed Patent Rights. Furthermore, Technical Information was not essential to their discovery or development. GSK's payments to Ligand are not and will not be to secure any Rockefeller rights that would otherwise prevent GSK from selling the GSK Products. Rockefeller does not own any Licensed Patent Rights or Technical Information that GSK would need to sell the GSK Products. Thus, no payments are due to Rockefeller under the License Agreement.

33.  Rockefeller has alleged the GSK Products embody or use one or more invention(s) described or claimed in the Licensed Patent Rights. In order to qualify as an invention in a claim of an issued patent, however, the alleged invention must be defined by a claim that is valid and enforceable.

34. Section 11.2 of the License Agreement provides that Ligand shall have the right to terminate any license grant at any time upon ninety days written notice.

35. On August 9, 2007, pursuant to Section 11.2, Ligand sent by facsimile and U.S. Mail a notice to Rockefeller of its intent to terminate the License Agreement. Pursuant to Section 11.2, the termination was effective under the License Agreement ninety days thereafter or on November 7, 2007.

36. Since termination of the License Agreement under Section 11.2, Rockefeller has claimed that the License Agreement was not terminated. Rockefeller contends that 25% of past and future payments related to GSK Products received by Ligand must be shared with Rockefeller.

37. The parties entered into a tolling agreement that contemplated the parties would try to resolve the controversy without the need for litigation. The tolling agreement expired on March 3, 2008. Rockefeller's communications prior to March 3, 2008, including their refusal to extend the tolling agreement and their specific threat of filing a lawsuit against Ligand at the expiration of the tolling agreement, have made Ligand reasonably afraid that it will be sued by Rockefeller on these issues today or within the next few days.

## VI. FIRST CLAIM FOR RELIEF – DECLARATORY JUDGMENT SCOPE OF LICENSED PATENT RIGHTS

38. Ligand incorporates by reference as though fully set forth herein paragraphs 1 through 37 of this Complaint.

39. The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

40. Rockefeller has alleged that the Rockefeller Patents are included within the Licensed Patent Rights and also that the GSK Products or their use embody or employ the Licensed Patent Rights.

41. Applying the plain meaning of the words of the License Agreement, the GSK Products and their use do not embody or employ any invention described or claimed in the Licensed Patent Rights.

42. An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products or their use embody or employ Licensed Patent Rights, whether or not the GSK Products or their use embody or employ any invention described or claimed in the Rockefeller Patents and whether or not the payments Rockefeller is demanding under the License Agreement are in fact due.

43. Even if the GSK Products embody or use an invention merely described in the Rockefeller Patents, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim of the Rockefeller Patents is valid for failure to comply with any one of 35 USC §§ 101 et seq.

44. On information and belief, Rockefeller has filed one or more patent applications for the purpose of claiming the GSK Products are subject to payments under the License Agreement, and Rockefeller did so with knowledge that no valid patent should issue. There is an actual controversy as to whether the GSK Products or their use embody or employ any invention described or claimed in any pending patent application and whether any such patent application filed after learning of the GSK Products was filed in good faith under the License Agreement.

## VII. SECOND CLAIM FOR RELIEF – DECLARATORY JUDGMENT SCOPE OF TECHNICAL INFORMATION

45. Ligand incorporates by reference as though fully set forth herein paragraphs 1 through 44 of this Complaint.

46. The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Technical Information of Rockefeller. (Section 2.1, License Agreement).

47. Rockefeller alleges that Technical Information was essential to the discovery or development of the GSK Products.

48. Ligand, relying on the plain meaning of the License Agreement, alleges that Technical Information was not used in the discovery or development of the GSK Products.

Ligand further alleges under Section 1.4 of the License Agreement Technical Information must be owned by Rockefeller and existing or capable of description in a tangible form and must have been developed in the laboratory of Darnell or of David Levy of NYU as of September 30, 1992 or by Darnell at his laboratory on or before five years from September 30, 1992 or by September 30, 1997. The GSK Products were not developed using Technical Information but rather used either publicly known information, information known or discovered by Ligand and/or GSK, or information received from third parties.

49.   An actual controversy exists between Rockefeller and Ligand as to whether or not Technical Information was essential to the discovery or development of the GSK Products.

## VII. THIRD CLAIM FOR RELIEF – DECLARATORY JUDGMENT
## TERMINATION

50.   Ligand here incorporates by reference as though fully set forth herein paragraphs 1 through 49 of this Complaint.

51.   Rockefeller relies on Section 11.3 of the License Agreement in asserting that, absent a material breach, the "Agreement" cannot be terminated.

52.   Ligand claims, in the alternative, that the notice dated August 9, 2007 either terminated the License Agreement in its entirety, subject only to certain specified rights which survived termination, or to the extent any different, terminated all then existing license rights, again subject only to any rights that might survive termination.

53.   An actual controversy exists between Rockefeller and Ligand as to whether or not the License Agreement has been terminated and as to the nature of the rights terminated.

## VIII. DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff requests that:

1.   This Court enter a judgment declaring the GSK Products do not embody any invention(s) described or claimed in the Licensed Patent Rights and that the use of the GSK Products do not employ any invention(s) described or claimed in the Licensed Patent Rights;

2. This Court enter a judgment declaring that Technical Information was not essential to the discovery or development of the GSK Products;

3. This Court enter a judgment declaring that Ligand is not liable for any additional payments under the License Agreement beyond those that have already been made;

4. This Court enter a judgment declaring that the License Agreement was terminated as of November 7, 2007 and that subsequent to termination of the License Agreement, Ligand is not liable for any future payments under the License Agreement;

5. Plaintiff be awarded costs, attorneys' fees and other relief, both legal and equitable, to which it may be justly entitled;

6. Plaintiff be awarded relief under 28 U.S.C. § 2202; and

7. Plaintiff be awarded such other and further relief as this Court deems proper.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: 3/3/08     By: _____
Darrell Olson (signature via facsimile)

Attorneys for Plaintiff
LIGAND PHARMACEUTICALS INCORPORATED

-9-

Exhibit "5"
73